IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | |
| v.  ) | CIVIL ACTION NO.  10-0406-CG-B |
| ) | |
| WILLIAM H. LYNCH, individually  ) | |
| and dba LYNCH DME LLC,  ) | |
| dba United Home Healthcare LLC  ) | **JURY DEMAND** |
| and LOREN SAALMAN,  ) | |
| individually and as a former  ) | |
| employee of  LYNCH DME LLC,  ) | |
| dba United Home Healthcare LLC,  ) | |
| ) | |
| ) | |
| Defendants.  ) | |
| ) | |

## COMPLAINT

## INTRODUCTION

1.  The United States brings this Complaint against William Howard  Lynch ("Lynch"), individually and dba Lynch DME LLC ("Lynch DME") dba United Home Healthcare LLC (UHHC), and Loren Saalman ("Saalman"), individually and as a former employee of  Lynch DME LLC dba United Home Healthcare LLC.

2. This is an action to recover treble damages and civil penalties for making and causing to be made false statements, representations and claims to Medicare in

connection with reimbursement for medically unnecessary motorized wheelchairs that were not prescribed by a physician, and for the payment of illegal kick-backs in exchange for the referral and/or sale of durable medical equipment, pursuant to the False Claims Act (the FCA), as amended, 31 U.S.C. §§ 3729-3733.

3.  This is an action for temporary and permanent injunctive relief pursuant to 18 U.S.C. § 1345, to prevent the alienation and disposition of property derived from the commission of healthcare fraud offenses  for the purpose of preventing a continuing and substantial injury to the United States and its citizens.

4.  The United States also brings this action to recover all available damages and other monetary relief, legal or equitable, under the common law theories of fraudulent conversion of illegal profits, fraud, unjust enrichment, and payment by mistake.

5.  From at least 2003 to 2004, defendants made and/or caused to be made false claims and statements to Medicare to obtain reimbursement for motorized wheelchairs and other durable medical equipment, that were not prescribed by a physician, were not wanted or needed by beneficiaries, who, in some instances, could not even use the wheelchairs, or could not use them safely, and were submitted as a result of the payment of illegal kick-backs in exchange for Medicare beneficiary patient referrals.

6.  The false claims resulted from a course of fraudulent conduct in which, defendants paid illegal kickbacks, disguised as "sales commissions,"  to Bettye Files Barnes ("Barnes"),  for the referral and/or sale of durable medical equipment. Barnes consistently engaged in deceit and trickery in her dealings with Medicare beneficiaries, their doctors, and ultimately with Medicare.  Defendants, with actual knowledge, reckless disregard and/or deliberate ignorance, sanctioned, allowed and otherwise furthered Barnes fraudulent activity, and submitted or caused to be submitted, false claims to Medicare for reimbursement.

7.  As a result of the fraudulent practices described herein, Medicare paid for power wheelchairs that were of little or no benefit to the elderly and disabled persons covered by these government medical insurance programs;  thousands of public dollars were wasted on expensive equipment that was not used at all or was not used for the purposes intended by Medicare; and the defendants made substantial profit and significant financial gain at the expense of the United States and its citizens.

8.  At all relevant times herein, these defendants had knowledge of the investigation conducted by the Federal Bureau of Investigation ("FBI") and the Department of Health and Human Services ("HHS") for the Medicare fraud that is the subject of the litigation.  Further, these defendants, while agreeing to cooperate

with the United States and discussing reimbursement of funds derived from the

aforementioned fraud scheme, have intentionally dissipated assets in an effort to

thwart federal prosecution and to obstruct the administration of justice.[1]

Defendants continue to engage in this activity.

## JURISDICTION AND VENUE

9.  The Court has jurisdiction over this claim pursuant to 31 U.S.C. §§ 3730

and 3732, and pursuant to 28 U.S.C. § 1345, and supplemental jurisdiction to

entertain the common law and equitable causes of action pursuant to 28 U.S.C. §

1367(a).

10.  Venue is proper in this District under 28 U.S.C. § 1391 (b) and (c) and

31 U.S.C. § 3732(a).  At all relevant times to the Complaint, defendants transacted

business within the district, and the acts proscribed by the False Claims Act

occurred within the district.

## PARTIES

11.  Plaintiff in this action is the United States.  The Complaint is filed by

the United States on behalf of the Department of Health and Human Services

("HHS").  HHS is an agency and instrumentality of the United States and its

activities, operations and contracts are paid from federal funds.  The Secretary of

---

[1]During the course of these discussions, the defendants entered into Tolling Agreements
with the United States otherwise known as "A Waiver of Statute of Limitations Agreement."

HHS administers the Medicare Program through the Centers for Medicare and Medicaid Services ("CMS"), formerly known as the Health Care Financing Administration ("HCFA").

12.   Defendant William Howard Lynch, is a citizen of the United States and resides at 24046 St. Croix Road, St. Croix, Indiana 47576.   Lynch is the president and owner/operator of Lynch DME LLC, dba United Home Healthcare LLC.

13.   Defendant, Loren Saalman, is a citizen of the United States and resides at 24940 St. Croix Road, St. Croix, Indiana 47576.  Saalman is the former manager and board member of Lynch DME LLC dba UHHC.

14.   Defendant, Lynch DME LLC, dba United Home Healthcare, LLC, is a limited liability corporation organized and existing under the laws of the State of Kentucky with its principal place of business located at 8159 U.S. Highway 60 West, Lewisport, Kentucky 42351 and/or 8042 U.S. Highway 60 West, Lewisport, Kentucky 42351.  Lynch DME dba UHHC is not qualified to do business in the State of Alabama, and at all times relevant to this Complaint was, and is currently, engaged in the business of providing durable medical equipment to individuals eligible to receive reimbursement for such items from Medicare. William H. Lynch is the named registered agent for Lynch DME LLC.  Lynch DME LLC is the named registered agent for United Home Healthcare, LLC.

## STATUTORY AND REGULATORY FRAMEWORK

15.   At all times relevant to this action, the FCA provides that any person who, with actual knowledge, with reckless disregard of the truth or falsity of the information, or with deliberate ignorance of the truth or falsity of the information, submits, or causes to be submitted, a false or fraudulent claim to the United States for payment or approval, or makes or causes to be made a false record or statement to get a false or fraudulent claim paid or approved by the United States, is liable for treble damages and a civil penalty of not less than $5,500 and not more $11,000, *see* 28 C.F.R. Ch.1, Section 85.3(a)(9), for each claim, plus three times the amount of the damages sustained by the United States because of the false claim. 31 U.S.C. § 3729(a).

16.   The Anti-Kickback Statute, 42 U.S.C. § 1320a - 7(b), prohibits any person or entity from making or accepting payment to induce or reward any person for referring, recommending or arranging for federally-funded medical services. To protect the integrity of the program from these difficult to detect harms, Congress enacted a per se prohibition against the payment of kickbacks in any form, regardless of whether the particular kickback gives rise to overutilization or poor quality of care.  A violation of 42 U.S.C. § 1320a - 7(b) operates as a basis for FCA liability.

## Medicare Coverage of Power Wheelchairs

17.  Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq*. establishes the health insurance for the Aged and Disabled Program, popularly known as Medicare.  The Secretary of HHS administers the Medicare program through CMS, a component of HHS.  *See* 42 U.S.C. §§ 1395b-3(d).

18.  Part B of the Medicare program, which is the subject of this litigation, provides federal reimbursement for Medicare covered items and services for Medicare beneficiaries, including durable medical equipment ("DME").  *See* 42 U.S.C. §§ 1395k, 1395l, 1395x(s);  42 C.F.R. § 410.152.  Medicare Part B participants pay monthly premiums, which are deposited along with federal appropriations in the Federal Supplementary Medical Insurance Trust Fund which finances Part B (the Trust Fund).  *See* 42 U.S.C. §§ 1395j, 1395r, 1395s, 1395t, 1395w.  The Medicare statute and its implementing regulations set forth conditions and limitations on the coverage of services and items, 42 U.S.C. §§ 1395k, 1395l, 1395x(s), and exclude certain services and items from coverage and otherwise specify various limitations.  42 U.S.C. § 1395y(a)(2)-(16);  42 C.F.R. § 411.15(a)-(j).

19.  For most covered items and services, Medicare Part B covers up to 80 per cent of the cost of "reasonable and necessary" medical services for the "diagnosis or treatment of illness or injury or to improve the functioning of a

malformed body member."  42 U.S.C. § 1395y(a)(1)(A);  *see also* 42 C.F.R.

411.15(k)(excluding from coverage services that are not reasonable and

necessary).

20.   Medicare classifies wheelchairs as DME, which is eligible for

reimbursement under Medicare Part B.  *See* 42 U.S.C. §§ 1395k, 1395x(s).  DME

is equipment that can withstand repeated use, is primarily used for a medical

purpose, is generally not useful to an individual in the absence of illness or injury,

and is appropriate for use in the home.  *See* 42 C.F.R. § 414.202.  The Medicare

DME benefit covers wheelchairs used in the patient's home (including institutions

other than hospitals or skilled nursing facilities).  *See* 42 U.S.C. § 1395x(n);  42

C.F.R. § 410.38(a)-(c).

21.   At all relevant times to the Complaint, private insurance companies

known as Durable Medical Equipment Regional Carriers (DMERCs) administered

the DME program for HHS, including the processing of payments from the Trust

Fund to DME suppliers on behalf of program beneficiaries.  *See* 42 U.S.C. §

1395u; 42 C.F.R. § 421.210.  Medicare claims for DME services rendered to

Alabama Medicare beneficiaries were submitted to and processed by Palmetto

GBA, the DMERC for Alabama's region.

22.   Congress requires suppliers to submit a physician's Certificate of

Medical Necessity ("CMN") with each DME claim for reimbursement.   42 U.S.C.

§ 1395m(j)(2)(A).  The Medicare beneficiary's treating physician is required to set

forth the medical necessity for the power wheelchair and is also required to sign

the CMN after attesting that he/she is the beneficiary's treating physician and the

medically necessary information is true, accurate and complete.

23.  The CMN includes a section describing the power wheelchair and

accessories that are ordered by the treating doctor and contains the DME

supplier's charge.   This section of the CMN forms the basis of the bill sent to

Medicare.  The supplier's date of service is the date of delivery to the beneficiary's

home.

## The Fraudulent Scheme

24.  At all times relevant to the Complaint, Lynch, was the president and the

owner/operator of Lynch DME LLC dba UHHC, a supplier of durable medical

equipment ("DME").  On or about July 24, 2001, Lynch executed a Medicare

provider/supplier enrollment application on behalf of Lynch DME, in which

Lynch specifically certified compliance with 18 U.S.C. § 1001; the civil False

Claims Act, 31 U.S.C. § 3729 *et seq*.; the Anti-Kickback Statute, 42 U.S.C. §

1320a- (b)  and common law fraud.  See Medicare Supplier Enrollment

Application at pp. 10-11, attached as Exhibit "A" and incorporated herein.  Lynch

DME was assigned Medicare supplier number 4270530001.

25.  At all times relevant to the Complaint, Lynch DME LLC dba UHHC

was a participating Medicare Part B supplier, and submitted claims to (Palmetto)

Medicare, through its billing service, Accounts Receivable Consultants.

Defendants' responsibilities included submitting patient information, charges, and

a physician signed CMN.

26.  In late 2003 or early 2004, Lynch and Saalman personally traveled to

Monroeville, Alabama to meet with Barnes, a retired nurse.  Lynch and Saalman

agreed to pay Barnes a patient referral fee when said referral resulted in an actual

sale of durable medical equipment, and Lynch DME received reimbursement from

Medicare for the submitted claim.  Some examples of the agreed upon fees are as

follows:  $750.00 per motorized wheelchair, $100.00 per APM, $75.00 per bed

and $15.00 per walker.

27.  Barnes, in turn, solicited the assistance of Tchlyndria Dianne Steele

("Steele"), a registered medical assistant who was employed with Coastal

Neurological Institute ("CNI"), located at 3280 Dauphin Street, Mobile, Alabama

36606.  In exchange for small sums of money, gifts, lunches, and a $2,000.00

"loan",  Steele provided Barnes with patient profiles from CNI patients and/or

those patients who were being treated at J.L. Bedsole/Rotary Rehabilitation

Hospital.   The treating physicians at CNI included  James Matthew Crumb, M.D.

("Dr. Crumb"),  Edward Schnitzer, M.D. ("Dr. Schnitzer"), and  Robert White,

M.D. ("Dr. White").  During the course of this arrangement, Steele sent Barnes

approximately 150 patient profiles per month.

28.   Using the information provided on these profiles, Barnes solicited

patients by telephone advising them that they qualified for a motorized wheelchair.

If the patient verbally accepted the equipment, or if they otherwise did not dispute

their need for a wheelchair, Barnes provided the patient information referral to

Saalman and/or Lynch DME as "approved" or "pre-approved".

29.   Barnes prepared all portions on the majority of the CMNs, including

the treating physician's section, and faxed these CMNs  to Steele for a physician

signature.  On some occasions,  Barnes' daughter, Michele Files, who was a

student in Mobile, Alabama, delivered the CMNs to the physicians' office. During

an FBI interview, Steele admitted that she signed Dr. Schnitzer's name on the

CMNs.  A review of Barnes' patient files that the FBI seized from Lynch DME on

or about June 14, 2005, revealed that the CMNs that contained Dr. Schnitzer's

signature included Steele's initials.

30.  Barnes returned the completed and signed CMNs directly to Saalman or

to the office personnel at Lynch DME dba UHHC in Kentucky.

31.  Once the paperwork was completed at Lynch DME, the motorized

wheelchairs were delivered directly to the beneficiaries' residence and assembled

on site.  Saalman and Lynch delivered these wheelchairs and had direct contact

with the Medicare beneficiaries, including those who were referred by Barnes. Saalman and Lynch were aware of beneficiaries refusing wheelchairs, calling and questioning the receipt of wheelchairs, and calling Lynch DME to return the wheelchairs.

32.  An example of the scheme operated as follows:  On April 19, 2004, Barnes made an unsolicited phone call to Medicare beneficiary X.  Barnes told beneficiary X that she qualified for an electric wheelchair, even though the individual was completely ambulatory.  Through Steele, Barnes knew that beneficiary X was Dr. White's patient, and further, that beneficiary X was on disability because of a back injury.  On or about April 23, 2004, Barnes faxed a completed  CMN, including Dr. White's signature, to Lynch DME for processing. On May 7, 2004, Barnes delivered the motorized wheelchair to beneficiary X's residence in the presence of an investigating HHS agent.  Thereafter, using the false CMN, Lynch DME billed Medicare $7,942.98 for the motorized power chair and additional amounts for accessories.  Medicare paid the claim in the amount of $4,792.77 on May 18, 2004.  On June 10, 2004, Barnes received a wire transfer which included a $750.00 referral fee for beneficiary X's wheelchair.

33.  Lynch as the president and owner/operator of Lynch DME dba UHHC, and Saalman, as the general manager, allowed Barnes to limit their contact, and their employees' contact, with patient referrals and prescribing doctors.  Lynch as

the president and owner/operator of Lynch DME dba UHHC, an approved

Medicare supplier of DME, and Saalman, as the general manager, with actual

knowledge, deliberate indifference and/or reckless disregard, allowed Barnes to

provide them with inaccurate, false and misleading CMNs for submission to

Medicare.  Many of the CMNs that Barnes provided to these defendants included

Steele's initials in the signature line.  Lynch and Saalman both knew that a

physician was required to sign the CMN; and furthermore, Lynch and Saalman

both knew that submitting false CMNs to Medicare was illegal.

34.  Lynch and Saalman, individually and on behalf of Lynch DME, had

actual knowledge of Barnes' fraudulent activity, and/or acted with reckless

disregard or deliberate ignorance of the truth or falsity of Barnes' fraudulent

activity, such as Barnes' excessive referrals from the same source, Barnes

restriction of communication to patients and prescribing physicians, Barnes'

unusually high volume of sales, Barnes' hand written "approval" notes and "pre-

approved" status she placed on patient profiles, the discrepancies contained in the

CMNs (physician deceased, Steele's initials in the signature line),  the declination

or return of wheelchairs by Medicare beneficiaries, the large amount of money

paid to Barnes in referral fees, the direct observation of beneficiaries' medical

needs  upon delivery of the wheelchairs, and the wiring of large sums of money to

her brother's bank account in exchange for patient referrals.

35.  Per Barnes' instructions, defendants wired Barnes' "commission" payments to BankTrust located in Monroeville, Alabama, to the bank account of her brother, Jimmy Black, a dry wall installer.   From 12/29/03 to12/30/04, defendants wired, and paid by check a total of $ 92,301.00 in illegal kickbacks to Barnes.   See summary of Barnes Income with Medicare Beneficiary names redacted, attached as Exhibit "B" and incorporated herein.

36.  During the course of this investigation, HHS and the FBI obtained a report of Medicare claims submitted by Lynch DME, LLC dba UHHC in the state of Alabama.  These claims records indicated that Dr. White had approved wheelchairs for 15 patients, Dr. Schnitzer had approved wheelchairs for 22 patients, and Dr. Crumb had approved wheelchairs for 8 patients.  Drs. Crumb, White and Schnitzer were subsequently interviewed and reported that they did not approve any wheelchairs for the patients identified by HHS and/or the FBI, and in fact, many of the listed beneficiaries would actually be harmed attempting to use a motorized wheelchair.

37.  At a minimum, Medicare paid 45 false claims to Lynch DME LLC dba UHHC in the amount of $211,376.00 as a result of defendants' fraud scheme. During the 2004 tax year, Lynch DME LLC's gross profits totaled $1,317,980.00, and Lynch personally received a draw in the amount of $419,542.37.  In

comparison to the 2003 tax year,  Lynch DME LLC's gross profit totaled $330,048.00, and Lynch did not receive a draw.

38.  In sum, by the actions described above, these defendants caused the United States to pay for power wheelchairs that were not needed, wanted or usable, resulting in hundreds of thousands of wasted dollars paid from the Medicare Trust Fund.  The false claims submitted by these defendants were made with actual knowledge, with deliberate ignorance of the false information and/or with reckless disregard of the false information within the meaning of the FCA, and were submitted as a result of an illegal kickback scheme in violation of the FCA.

39.  Defendants made substantial sums of money, illegal profits and illicit gain primarily during the 2004 and 2005 tax years, and have intentionally dissipated these assets to avoid prosecution.

40.  Attached as Exhibit "C" to this Complaint and incorporated herein is a list of false claims the defendants submitted to Medicare for payment in violation of the FCA.[2]

---

[2]Identifying information on every exhibit attached hereto has been redacted to protect the privacy of the beneficiaries involved.  The United States will file unredacted copies under seal.

## Count I

## False Claims Act: Presentation of False Claims
## 31 U.S.C. § 3729(a)(1)[3]

41.  The United States realleges and incorporates by reference paragraphs 1 through 40 as though fully set forth herein.

42.  This is an action brought by the United States against Lynch individually and dba Lynch DME, and against Saalman individually and as a former employee of Lynch DME pursuant to § 3729(a)(1) of the FCA.

43.  Defendants knowingly, with deliberate ignorance, and/or with reckless disregard of the truth,  presented false or fraudulent claims for payment, or knowingly, with deliberate ignorance, and/or with reckless disregard of the truth, caused false or fraudulent claims for payment to be presented, to officials of the United States government in violation of 31 U.S.C. § 3729(a)(1).

44.  The false claims for payment submitted by defendants include but are not limited to claims for which the United States seeks reimbursement in this suit.

45.  The claims were false because they were submitted pursuant to a fraudulent scheme implemented by defendants to bill Medicare for power wheelchairs that were not wanted or needed by beneficiaries, were not prescribed

---

[3]The Fraud Enforcement Recovery Act of 2009 ("FERA") amended 31 U.S.C. § 3729(a)(1) to exclude language of presentment "to an officer or employee of the United States Government... ." Former § 3729(a)(1) is now cited as 31 U.S.C  § 3729 (a)(1)(A) and applies to all conduct on or after the effective date of  May 20, 2009.

by a physician as reasonable and necessary, and were tainted by the payment of illegal kickbacks to induce referrals.

46.  Defendants knowingly set up an illegal kickback scheme in exchange for the referral of Medicare beneficiaries in the State of Alabama in an effort to increase their profits at the expense of the public.  Defendants knew that the payment of kickbacks in exchange for Medicare beneficiary referrals is a federal offense.

47.  Defendants signed provider/enrollment applications certifying that they would comply with all laws, regulations and guidance concerning proper practices for Medicare suppliers.

48.  Because of the conduct set forth in this count, the United States is entitled to treble damages and statutory penalties for each false claim submitted in violation of 31 U.S.C. § 3720(a)(1) in an amount to be determined at trial.

## Count II

## False Claims Act: False Record or Statement
## 31 U.S.C. § 3729 (a)(1)(B)[4]

49.  The United States realleges and incorporates by reference paragraphs 1 through 48 as though fully set forth herein.

---

[4]FERA amended 31 U.S.C. § 3729(a)(2) and this section is now cited as 31 U.S.C. § 3729(a)(1)(B).  Section 3729(a)(1)(B) took effect as if enacted on June 07, 2008, applying to all claims under the False Claims Act (31 U.S.C. § 3729 *et seq.*).

50.   This is an action brought by the United States against Lynch individually and dba Lynch DME, and against Saalman individually and as a former employee of Lynch DME pursuant to § 3729(a)(2) of the FCA.

51.   By virtue of the acts described above, the defendants' certified that they would comply with all laws, regulations, and guidance concerning proper practices for Medicare providers.  Defendants knowingly, with deliberate ignorance, and/or with reckless disregard of the truth or falsity of the information, made and used, or caused to be made and used, false records or statements to get false or fraudulent claims paid or approved by the United States.

52.   By virtue of the false records or statements used to get false or fraudulent claims paid or approved, the United States has suffered actual damages, is entitled to recover three times the amount by which it was damaged, plus civil monetary penalties of not less than $5,500.00 and not more than $11,000.00 for each false claim presented or caused to be presented, and any other monetary relief that is appropriate.

## Count III

## Injunctive Relief
## 18 U.S.C. §1345

53.   The United realleges and incorporates by reference paragraphs 1 through 52 of this Complaint as though fully set forth herein.

54.  Defendants have presented or caused to be presented false and fraudulent claims upon the United States.

55.  Defendants' fraud upon the United States constitutes a continuing and substantial injury to the United States and its citizens.

56.  The United States brings this action to protect Medicare funds by restraining defendants' unlawful fraudulent conduct and to protect and restrain the transfer of funds and assets now in the defendants' hand as ill-gotten gains from their fraud upon the Medicare program.

57.  Pursuant to 18 U.S.C. § 1345, the United States is entitled to a temporary restraining order, a preliminary injunction, and a permanent injunction restraining future fraudulent conduct and any other action the Court deems just in order to prevent a continuing and substantial injury to the United States.  The United States is also entitled to an injunction to bar defendants from alienating, disposing, withdrawing, transferring, removing or dissipating any property obtained as a result of these Federal healthcare fraud offenses, including property traceable to such violation or property of equivalent value.

### Count IV

### Unjust Enrichment

58.  The United States realleges and incorporates by reference paragraphs 1 through 57 as though fully set forth herein.

59.  This is a claim for recovery of monies to which all defendants have been unjustly enriched, including profits earned by defendants as a result of defendants' payment of kickbacks to Barnes in exchange for the referral of federal healthcare program patients to the defendants.

60.  In consequence of the acts set forth above, defendants were unjustly enriched at the expense of the United States in an amount to be determined, under circumstances dictating that, in equity and good conscience, the money should be returned to the United States.

61.  The United States requests a full accounting of all revenues (and interest thereon) and costs incurred by the defendants on sales to patients referred by Barnes and disgorgement of all profits earned and/or imposition of a constructive trust in favor of the United States on those profits.

## Count V

## Payment By Mistake

62.  The United States realleges and incorporates by reference paragraphs 1 through 61 as though fully set forth herein.

63.  This is a claim for the recovery of monies paid by the United States to defendants by mistake.

64.  The false claims that defendants submitted to the United States' agents constituted misrepresentations of material fact.  The United States, acting in

reasonable reliance on the accuracy and truthfulness of the information contained in the claims, paid defendants certain sums of money to which they were not entitled, and they are thus liable to account and pay such amounts, which are to be determined at trial, to the United States.

## Count VI

## Common Law Fraud

65. The United States realleges and incorporates by reference paragraphs 1 through 64, as if fully set forth herein.

66. The United States has suffered a loss in an amount yet to be determined as a result of false statements intentionally made by defendants in furtherance of its fraudulent schemes. Such false statements include the false statements made on the CMS Forms 1500 filed with each claim for reimbursement.

67. The false statements by defendants were material in each instance alleged herein to the entities to whom they were made, who acted upon those false statements to their own detriment and to the detriment of the United States.

## PRAYER FOR RELIEF

WHEREFORE, the United States demands and prays that judgment be entered in favor of the United States against defendants as follows:

1. On Counts I and II (presenting false claims or statements or causing false claims or statements to be made), for treble the amount of the United States'

damages plus civil penalties of $11,000 for each false claim, record or statement; for all costs of this civil action; and for such other and further relief as the Court deems just and equitable;

2.  On Count  III (injunctive relief), that a temporary restraining order, preliminary injunction, and permanent injunction be granted in this matter enjoining the defendants from alienating, withdrawing, transferring, removing, dissipating or otherwise disposing of, in any manner, any moneys or sums presently deposited or held on behalf of the defendants by any financial institution; and further, enjoining the defendants from alienating, transferring, removing, dissipating or otherwise disposing of, in any manner, any assets, real or personal, in which any of the defendants have  acquired an interest on or after January 1, 2004;

3.  On Counts IV and V (unjust enrichment and payment by mistake), for the damages sustained and/or amount by which defendants were unjustly enriched or by which it retained illegally obtained monies, plus interest, costs, and expenses, and such further relief as may be just and proper.

4.  On Count VI (fraud), for the damages sustained by the United States plus interest, costs, expenses, and punitive damages in any amount to be determined at trial, and such further relief as may be just and proper.

For such other and further relief as the Court deems just and equitable.

Respectfully submitted,

KENYEN R. BROWN
UNITED STATES ATTORNEY

Eugene A. Seidel
First Assistant United States Attorney
Chief of the  Civil Division

*s/ Deidre Colson*

_____
By:  Deidre Colson (COLSD4360)
Assistant United States Attorney
63 S. Royal Street, Suite 600
Mobile, Alabama 36602
Tele: (251) 441-5845
Fax: (251) 441-5051
Deidre.colson@usdoj.gov

DATED:  July 30, 2010